## Case No. 14,539.

### UNITED STATES v. BASSETT.

[2 Story, 389;[1] 6 Law Rep. 201.]

Circuit Court, D. Massachusetts. May Term, 1843.

STATUTES — INTERPRETATION — CLERK OF COURT — COMPENSATION — CLERK OF DISTRICT AND OF CIRCUIT COURT.

1. Statutes are to be interpreted so as to give effect to all the words therein, if such an interpretation be reasonable, and be neither repugnant to the provisions nor inconsistent with the objects of the statute; but the rule is otherwise, if such an interpretation require the introduction of new provisions and clauses to render it sensible or practicable.

[Cited in Braithwaite v. Cameron (Okl.) 38 Pac. 1086; Chadwick v. Earhart, 11 Or. 389, 4 Pac. 1181; Clay v. Pennoyer Creek Imp. Co., 34 Mich. 211; Emery v. Hobson, 63 Me. 36; State v. Baker, 25 Fla. 598, 6 South. 447; U. S. v. Averill, 4 Utah, 416, 7 Pac. 530.]

2. By the act of congress of May 18, 1842, c. 29 [5 Stat. 475], where the offices of clerk of the district court and of the circuit court are held by the same person, he is entitled to a compensation not exceeding thirty-five hundred dollars as district clerk, and also to a compensation not exceeding twenty-five hundred dollars as circuit clerk, per annum.

[1] [Reported by William W. Story, Esq.]

3. But the fees of the two offices are to be kept distinct, and if the fees of either do not amount to the maximum fixed by the act, the deficiency should be placed to the account of the clerk, and cannot be made up from any excess in the fees of the other court.

4. Thus, where the two offices are held by one person, and his fees as district clerk amount to more than thirty-five hundred dollars, and his fees as circuit clerk to less than twenty-five hundred dollars, he is entitled to the first mentioned sum as district clerk, and to the actual fees as circuit clerk, and no more.

This was an amicable suit, brought by the United States, to recover a balance, supposed to be due to the plaintiffs from [Francis Bassett] the defendant, as clerk of the district and circuit courts of the United States for the Massachusetts district, upon his return, made to the secretary of the treasury, on January 1st, 1843, pursuant to the act of congress, passed May, 1842, making appropriations for the civil and diplomatic expenditures of government for the year 1842.

The return of the defendant to the treasury department was as follows:

Account of Fees Received and of Amounts Paid for Clerk Hire by the Clerk of the District and Circuit Courts of the United States, Massachusetts District, from July 1st, 1842, to January 1st, 1843.

District Court—June Term, 1842.

| | | |
|---|---|---|
| Per diem 18 days | 90 00 | |
| 49 Admiralty cases | 218 00 | |
| 13 Common law cases | 24 50 | |
| 3 Criminal examinations | 20 00 | |
| Copy-rights | 97 50 | |
| Miscellaneous matters | 13 00 | |
| | | $ 463 00 |

September Term, 1842.

| | | |
|---|---|---|
| Per diem 20 days | 100 00 | |
| 52 Admiralty cases | 217 00 | |
| 11 Common law cases | 48 00 | |
| Copy-rights | 99 50 | |
| Miscellaneous matters | 16 00 | |
| | | 480 50 |

December Term, 1842.

| | | |
|---|---|---|
| Per diem 15 days | 75 00 | |
| 39 Admiralty cases | 159 00 | |
| 11 Common law cases | 31 00 | |
| 5 Criminal cases | 60 00 | |
| Copy-rights | 60 00 | |
| Miscellaneous | 35 00 | |
| | | 420 00 |

Circuit Court—May Term, 1842.

| | | |
|---|---|---|
| Per diem 7 days | 35 00 | |
| 5 Cases in equity | 73 00 | |
| 5 Cases at common law | 24 90 | |
| Miscellaneous | 25 00 | |
| | | 157 90 |

October Term, 1842.

| | | |
|---|---|---|
| Per diem | 110 00 | |
| 29 Cases in equity | 102 54 | |
| 40 Cases at common law | 96 00 | |
| 10 Criminal cases | 120 00 | |
| Miscellaneous | 73 00 | |
| | | 501 54 |
| Fees received in bankrupt cases | 7,118 00 | |
| | | $9,140 94 |
| Amount paid for clerk hire as by schedule marked "A," annexed | 2,985 08 | |
| Maximum compensation to clerk | 3,000 00 | |
| | | 5,985 08 |
| Balance on hand | | $3,155 86 |

### Schedule A.

Amounts Paid for Clerk Hire from July 1st, 1842, to January 1st. 1843.

| | |
|---|---|
| Paid to James B. Robb............ | 750 00 |
| Paid to Elisha Bassett............ | 500 00 |
| Paid to H. A. Frost.............. | 300 00 |
| Paid to F. Warren................ | 300 00 |
| Paid to Henry F. Starkey......... | 300 00 |
| Paid to T. M. H. Lyon........... | 290 70 |
| Paid to James Amos.............. | 277 93 |
| Paid to James Boyle............. | 266 45 |

$2,985 08

Upon this return the first auditor of the treasury reported as follows:

Treasury Department.
First Auditor's Office, 2d June, 1843.

I have examined and adjusted an account of official receipts and expenditures of Francis Bassett, clerk of the district and circuit courts of the United States for the district of Massachusetts, commencing July 1st. and ending December 31st, 1842, under the civil and diplomatic appropriations act of 18th May, 1842, and find that he is charged as follows:

| | |
|---|---|
| To amount of fees received by him during said period ............. | $9,140 94 |

$9,140 94

I also find that he is entitled to the following credits, viz ·

| | |
|---|---|
| By amount of compensation to his deputies ...... ............. | 2,985 08 |
| By maximum compensations for the half year ..................... | 1,750 00 |
| And that the balance due to the United States on the 1st day of January, 1843, amounted to.............. | 4,405 86 |

$9,140 94

I have also examined and adjusted an account of the said Francis Bassett, and find that he is chargeable as follows:

| | |
|---|---|
| To balance of his account ending 31st December, 1842 ................ | 4,405 86 |

$4,405 86

I also find him entitled to credit—

| | |
|---|---|
| By amount of warrant No. 1811 in favor of the treasurer, dated June 1st, 1843 ...................... | 3,155 86 |
| And that the balance due to the United States amounts to........... | 1.250 00 |

$4,405 86

It was agreed by the parties that a default or nonsuit should be entered, upon the construction of the act relating to the fees and emoluments of the clerks of the courts of the United States.

Mr. Dexter, U. S. Dist. Atty.

It is a sound and useful rule of construction, that an instrument or statute shall be so interpreted. if possible, that effect may be given to all its parts. It is plain, that upon the construction contended for by the defendant, the words "or in case both of the said clerkships shall be held by the same person, of the said offices," are entirely superfluous and ineffectual; for without them, it is clear that the incumbent of both offices would be entitled to the salary of both. they being made distinct offices by the act of February 28, 1839 [5 Stat. 321], which author-

ized the circuit courts to appoint their own clerks, until which time the district court clerk was, by virtue of the judiciary act of 1789 [1 Stat. 73], clerk also of the circuit court. It is then to be inquired, for what purpose were the words inserted in the act of 1842, which are quoted above. And it is difficult to conjecture any purpose except that of diminishing the fees of the offices when so held together. Extra-judicially, it could hardly be doubted. that the intention of the framer or amender of the act was to say, that when both offices were held by the same person, the incumbent should be paid only for one. But we are not allowed to conjecture the meaning of the legislature; we must find it in their language. Yet we must be careful not to be found hærentes in cortice by a too rigid construction of that language. Being satisfied, that something was intended, we are bound to find it if we can; and the obscurity or deficiency of the language is much relieved. when there seems but one purpose, that could have existed in the mind of the legislature. although the purpose be very feebly expressed. Transposition of words frequently assists us in such a case. Now, suppose these perplexing words, instead of having been obviously interpolated into the middle of a sentence by some reformer of supposed abuses, had been removed to the end of it, and inserted by way of proviso, thus—"Provided, however, that in case both of the said clerkships shall be held by the same person, he shall not be allowed to retain of the fees and emoluments of the said offices, for his own personal compensation, a sum exceeding three thousand five hundred dollars per year, for any such district clerk, *or a sum exceeding two thousand five hundred dollars per year for any such circuit clerk.*" In such case it would be plain, that the last clause (italicised) would be superfluous. yet, being in the disjunctive with the preceding clause, by the word "or," only one of the two salaries could be claimed; and where either of two may be claimed, of course the larger is due. Now the words are not altered by the above transposition, and it is not perceived that the sense is varied by the change of collocation. It will be remarked, that the salaries are provided not for such district clerkship and circuit clerkship, but for such district and such circuit clerks. If the legislature had intended that the incumbent of both offices should have both salaries. why did they not use the word "clerkship." in which case the meaning would have been clear? And, on the other hand, by the use of the words "such district clerk" and "such circuit clerk." taken in connection with the preceding clause, respecting both "clerkships" being held by the same person, was it not intended to designate a person? And if it be the same person that holds both offices, does it not compel him to elect to take the $3,500 as "such district clerk," "or" the $2,500 as "such

circuit clerk?" But it is significantly asked, "if the clerk is entitled to but one of these salaries, which shall he take? Why should he have the $3,500 rather than the $2,500 only?" But the question certainly exhibits very strongly the unskilfulness of the draftsman of the act. But I have already anticipated the answer—that having a right of election in such case, he would be entitled to the larger amount. But another answer has been suggested, namely: that he would take the larger salary as that of the "district clerk," because the person holding both offices is emphatically the "district clerk," being the only clerk of the district; whereas when the offices are separate, there is a clerk of the circuit court for the district, and a clerk of the district court, but no one is the clerk of the district. It will be observed, that in the act these officers are first named as clerks of the respective courts, but are last named as the district clerk and the circuit clerk. It is not pretended that this reasoning can be entirely satisfactory. It cannot be denied that it is highly verbal and perhaps hypercritical; but it is presented as the answer to verbal difficulties suggested by the defendant. It proceeds upon the supposition that congress meant something by these words, and that the only meaning they could have, is to restrict the salary of an incumbent of both offices. And, from the whole tenor of this section, it appears that retrenchment and restriction and security from large compensations to officers were its objects. But if the court should think otherwise, yet, upon the point of the amount to be retained by the defendant, as clerk of the circuit court, it is apparent, from the statement of the case, that he cannot charge his maximum of $1,250, because so much has not been received by him as clerk of the circuit court, during the six months; to make it up he must take about $590 from the fees in bankruptcy accruing in the district court, as only about $30 of bankrupt fees accrued in the circuit court, and all other fees there were but $659.44. The deficiency will perhaps be made up to the defendant in the accounts of the next six months.

Mr. Bassett, pro se, answered as follows:

The offices of district clerk and circuit clerk are distinct, the power of appointment to each being given by law to the respective courts, and a maximum compensation is affixed to each. Although both clerkships may be held by the same person, and this seems to have been contemplated by the act of 1842, it is provided, when this is the case, that the fees and emoluments of the said offices shall, up to the maximum of each, be paid to such district clerk, and such circuit clerk. This, it is believed, is the fair and only true interpretation of the act. Any other construction given to it would be arbitrary, for the person holding both offices might, with as much propriety, be limited to

the maximum compensation of circuit clerk, as to that of the district clerk. But there is no limitation to either, by express words, or by construction in the act. The language is "out of the fees and emoluments of the said offices, a sum not exceeding $3,500 to such district clerk, or a sum not exceeding $2,500 to such circuit clerk." Now if any limitation or restriction to one of the maximums had been intended, the language would have been, "and when the said clerkships shall be held by the same person, no such district and circuit clerk shall receive a sum exceeding $3,500." But it is said by the district attorney, that a statute should be so interpreted, if possible, that effect may be given to all its parts, and that the words, "or in case both the said clerkships shall be held by the same person," are entirely superfluous and ineffectual, for without them it is clear, that the incumbent of both offices would be entitled to the salary of both; and, therefore, the words must be construed to diminish the fees of the officers when so held by the same person. Can such an inference be drawn from any rule of construction? On the contrary, if the incumbent is entitled to both salaries, is it not because he holds both offices? And, if so, is it less clear and certain that he is entitled to both salaries, when the reason or foundation of his claim, (namely, that he holds both offices,) is stated in express words? Moreover, as the offices may be held by different persons, without the words, "when both clerkships shall be held by the same person, the said offices," &c. the intent of the act, that both salaries should be received by the same person, would not be so clear and certain; for it might be argued, that the provision for the circuit clerk was intended for that office alone, and not when both clerkships were held by the same person. The words, therefore, have a meaning and are not superfluous. In answer to the suggestion, that congress intended to diminish the fees of the offices, it is sufficient to reply, that such an intent is not expressed. The intent of congress, perhaps, can best be inferred from the cause which produced the act. By the act of May, 1841, the fees and emoluments of clerks of courts were limited to $4,500, and afterwards the bankrupt law was passed, which greatly increased the business and emoluments of the office. By the appropriation act of 1842, the clerks are required to include, in their semi-annual returns, all fees arising under the bankrupt act. This clause relating to fees in cases of bankruptcy, is not in the act of 1841, because when that act was passed, the bankrupt law did not exist. Now, it can hardly be supposed, that it was the intent of congress to lessen the maximum of clerk fees, when the business and emoluments of the office and the labor and responsibility had been quadrupled by cases in bankruptcy. If, therefore, by any rule of construction, it were allowable to infer the meaning

and intent of an act from the circumstances under which it was passed; the construction of the act of 1842, contended for by the defendant, is in accordance with the spirit as well as the letter of the act. The act of 1842 does not specify to which clerkship, the fees and emoluments received or payable under the bankrupt act, shall belong, when both clerkships are held by the same person; but the language is "out of the fees and emoluments of the said offices, such district clerk shall receive a sum not exceeding $3,500, and such circuit clerk a sum not exceeding $2,500"; and as the maximum compensation was undoubtedly fixed with reference to the fees in bankruptcy, and the fees and emoluments arising under the bankrupt act, are, by the words of the act of 1842, to be distinguished from any other service, it would seem to follow that the clerk is entitled to receive out of the fees and emoluments of the said offices the maximum compensation of six thousand dollars.

STORY, Circuit Justice. This is an amicable action, and turns altogether as to its merits upon the construction of a clause (No. 167) in the general appropriation act of May 18, 1842 (chapter 29). That clause, after appropriating the sum of $375,000 for defraying the expenses of the courts of the United States for the year 1842, &c., proceeds as follows: "Provided, however, that every district attorney, clerk of a district court, clerk of a circuit court, and marshal of the United States, shall, until otherwise directed by law, upon the first days of January and July in each year, commencing with the first day of July next, or within thirty days from and after the days specified, make to the secretary of the treasury, in such form as he shall prescribe, a return in writing, embracing all the fees and emoluments of their respective offices, of every name and character, distinguishing the fees and emoluments received or payable under the bankrupt act, from those received or payable for any other service; and in the case of a marshal, further distinguishing the fees and emoluments received or payable for services by himself personally rendered, from those received or payable for services rendered by a deputy; and also distinguishing the fees and emoluments so received or payable for services rendered by each deputy, by name and the proportion of such fees and emoluments which, by the terms of his service, each deputy is to receive; and also embracing all the necessary office expenses of such officer, together with the vouchers for the payment of the same, for the half year ending on the said first day of January or July, as the case may be; which return shall be, in all cases, verified by the oath of the officer making the same. And no district attorney shall be allowed by the said secretary of the treasury, to retain of the fees and emoluments of his said office, for his own

personal compensation, over and above his necessary office expenses, the necessary clerk hire included, to be audited and allowed by the proper accounting officers of the treasury, a sum exceeding six thousand dollars per year, and at and after that rate, for such time as he shall hold the office; and no clerk of a district court, or clerk of a circuit court, shall be allowed by the said secretary, to retain of the fees or emoluments of his said office, or, in case both of the said clerkships shall be held by the same person, of the said offices, for his own personal compensation, over and above the necessary expenses of his office, and necessary clerk hire included, also to be audited and allowed by the proper accounting officers of the treasury, a sum exceeding three thousand five hundred dollars per year, for any such district clerk, or a sum exceeding twenty-five hundred dollars per year for any such circuit clerk, or at and after that rate, for such time as he shall hold the office; and no marshal shall be allowed by the said secretary, to retain of the fees and emoluments of his said office, for his own personal compensation, over and above a proper allowance to his deputies, which shall in no case exceed three fourths of the fees and emoluments received as payable for the services rendered by the deputy to whom the allowance is made, and may be reduced below that rate by the said secretary of the treasury, whenever the return shall show that rate of allowance to be unreasonable, and over and above the necessary office expenses of the said marshal, the necessary clerk hire included, also to be audited and allowed by the proper accounting officers of the treasury, a sum exceeding six thousand dollars per year, or at and after that rate, for such time as he shall hold the office; and every such officer, shall, with each such return made by him, pay into the treasury of the United States, or deposit to the credit of the treasurer thereof, as he may be directed by the secretary of the treasury, any surplus of the fees and emoluments of his office, which his half-yearly return so made as aforesaid shall show to exist over and above the compensation and allowances hereinbefore authorized to be retained and paid by him." Mr. Bassett is, and for many years has been, the clerk of the district court of Massachusetts, and, until the year 1839, was under the judiciary act of 1789 (chapter 20, § 7), virtute officii, also clerk of the circuit court of that district. This regulation was applicable to all the circuit courts, excepting that held in the district of North Carolina, under the act of 29th of April, 1802 (chapter 31, § 8), where the circuit court had authority to appoint its own clerk, and excepting also the circuit courts of the Seventh circuit, created by the act of February 24, 1807 (chapter 71 [2 Stat. c. 16], § 3), which had also authority to appoint their own clerks. It was, in part, to cure this anomaly, and to

introduce a uniformity of regulation, as to the appointment of clerks of the circuit courts, as well as to prevent some practical inconveniences in the appointments, which had arisen in some of the circuits, that the act of February 28, 1839 (chapter 36), was passed, which (section 3) gave to all the circuit courts of the United States the appointment of their own clerks, and in case of a disagreement between the judges, gave the appointment to the presiding judge of the court. Under this act, Mr. Bassett was appointed clerk of the circuit court; and now holds the offices of clerk of the district court, and also of clerk of the circuit court of Massachusetts.

Under these circumstances, the question arises, whether Mr. Bassett is entitled, upon the true interpretation of the clause, above stated, of the act of 1842 (chapter 29), to the compensation not exceeding $3,500, as district clerk, and also to the compensation not exceeding $2,500 as circuit clerk, per annum, or to one only of these compensations; and if to one only, to which. The language of the clause, bearing upon this point is, that "no clerk of a district court, or clerk of a circuit court, shall be allowed by the secretary to retain of the fees and emoluments of his said office, or in case both of the said clerkships shall be held by the same person, of the said offices, for his own personal compensation, over and above the necessary expenses of his office, and necessary clerk hire included, &c. a sum exceeding $3,500 per year, for any such district clerk, or a sum exceeding $2,500 per year, for any such circuit clerk, or at and after that rate, for such time as he shall hold the office." It is plain from this language, that where the offices of district clerk and circuit clerk are held by different persons, each of them respectively is entitled to the prescribed compensation affixed to the office held by him. In such a case, it is equally plain, that the compensation is allowed for the duties and services performed in his office, and not as a mere gratuity. If this be the true interpretation of the clause in such a case, what ground is there to suppose that the like interpretation should not prevail, where both offices are held by one and the same person? The duties and services, to be performed in each office, are and must be the same, whether they are held by the same person, or by different persons. It would be to impute a most extraordinary intention to the legislature to presume, that it intended to apportion the compensation in the inverse ratio of the duties and services performed; or that it meant, if both offices were held by the same person, that the whole duties and services, performed in one, should be gratuitously performed, without any compensation whatsoever, although the compensation allowed for the duties and services, performed in the other, is strictly founded upon a quantum meruit, and merely a requital

therefor. Such a mode of legislation, so little supported by principles of justice or equity, ought certainly not to be adopted, unless the legislature has spoken in the most clear and unambiguous terms. If there be any ground for real substantial doubt, as to the correctness of such an interpretation, that alone would seem to repel it; for it is not in matters of doubt to be admitted that the legislature requires duties and services from a public officer, and yet intends to take from him the compensation, which it has itself deemed a fit compensation therefor, under ordinary circumstances. Besides; the act itself is restrictive of the right of the officers to all the fees and emoluments of their office, generally allowed by law, cutting down and limiting the compensation to a fixed maximum, and appropriating the residue to the public treasury. Now, in such cases, the general rule of interpretation is to give effect to the restriction and limitation, only so far as the legislature has clearly and positively spoken, since it is in derogation of private rights otherwise vested in the incumbent in office. We cannot, and we ought not, in such a case, to say, "Voluit, sed non dixit;" for the intention can be fitly gathered only from the words; and therefore it is but just to say, "Non voluit, quia non dixit."

But it is said that it is the duty of the court to give effect to all the words used by the legislature, if it can be reasonably done; and that in the present case, unless the construction contended for by the government prevails, no effect whatsoever is, or can be given to the words, "or, in case both of the said clerkships shall be held by the same person of the said offices;" for the interpretation of the other language would be the same, if they were struck out of the act. Certainly, we are to give effect to all the words of a statute, if by a reasonable interpretation that can fairly be done, and it involves no repugnancy to other provisions, and is not inconsistent with the apparent objects of the statute. But then, the qualifications of the rule are most material to be observed. The interpretation must in itself be reasonable. It must not be such as apparently was not, or could not be, within the legislative intendment. It must be such, as will promote, and not such, as will defeat or interfere with the policy, upon which the statute purports to be founded. A fortiori, such an interpretation is not to be adopted to give effect to particular words, which will require, on the part of the court, the introduction of new provisions and auxiliary clauses, which the statute neither points out, nor even hints at, and yet which are indispensable to make such interpretation sensible or practicable. Take, for example, the very case before the court. Suppose the construction of the act, contended for on the part of the government, were adopted by the court; what compensation is Mr. Bassett to receive? That of district clerk, or that of circuit clerk? The statute

has not spoken upon that point; and that very circumstance strongly shows, that the case could not have been within the contemplation of the legislature. But it is said, that Mr. Bassett has the right of election, and may say, whether he will receive the less or the larger compensation. Where does he get his right of election? It is not conferred upon him by the act. It is not even alluded to. If he should insist upon receiving the larger compensation, what is there to prevent the government from insisting, that he is entitled only to the smaller compensation? The right of election is just as much given by the statute to the government, as to Mr. Bassett. In the struggle for it, there is quite as much ground to assert the right of the government to exercise the privilege of an election as for Mr. Bassett to assert the like privilege. Each has an equal interest in the choice. In truth, the statute confers it on neither. It is silent as to the possible existence of any case for an election, and that silence is of itself very expressive that no such case was contemplated. It would scarcely be credible, that the legislature should contemplate a case where both offices were held by the same person, and intend only a single compensation for the duties attached to both, and yet should not have said what that compensation should be, or have provided for an election. Now, I confess myself not bold enough to insert in this statute, a clause giving the right of election either to the clerk or to the government. I find no warranty for it in the words or the objects of the statute; and to place it there, would, in my judgment, be to make a new enactment, and not to construe the existing language of the act.

But then, as to the point of the objection, that otherwise the words above recited have no distinct and emphatic effect, and that the act will read just the same without them; what is the amount of the objection? It is nothing more than that the legislature has used superfluous language; that it has used words which might have been spared, and are either unnecessary or tautological. Now, I believe, that there are very few acts of legislation in the statute book, either of the state or of the national government, or of the British parliament, which do not fall within the same predicament, and are not open to the same objection, or, if you please, to the same reproach. The truth is, that it arises sometimes from loose and inaccurate habits of composition of the draftsman, sometimes from hasty and unrevised legislation, but more frequently from abundant, and, perhaps, over-anxious caution. Even our constitutions of government, if nicely scrutinized, cannot escape this reproach, if reproach it can properly deserve to be called. Mr. Madison has somewhere remarked, that the constitution of the United States contains numerous tautological expressions, which convey no additional or distinct meaning from the context. The very first power given to the

congress of the United States by the constitution, the power "to lay and collect taxes, duties, imposts, and excises," is open to this very suggestion. Are not duties, imposts and excises, in reality taxes? Are not these words sometimes used to express the same thing? Imposts are but external taxes or duties; excises are but internal taxes and duties. No one, however, can reasonably doubt, but these words were all used in the constitution from abundant caution, to avoid a doubt or to prevent a cavil, as each of these words is sometimes used in a broad and general sense, and sometimes in a more narrow and restricted sense. The objection, therefore, is not of itself a just ground to alter the interpretation of any clause of an act, otherwise sensible and satisfactory, in order to escape the imputation of being unnecessary. Assuming it to be unnecessary, it by no means follows, that it is, therefore, to have some new meaning given to it, or that it may not justly be presumed to be used ex majori cautela. In the present case, I have no doubt, that the clause was introduced into the act, ex majori cautela. The legislature knew, that in some of the circuits the district clerk was not the circuit clerk, and that in all the circuit courts it was competent for the court to make a separate and distinct appointment. It meant to provide, therefore, for both classes of cases; and to apply the same rule of compensation, whether both offices were held by the same person, or not. It might have been a matter of some doubt (I do not say of well-founded doubt), whether the limitation of the compensation applied to any cases, except where both offices were held by different persons. It was, therefore, a matter very fit to be provided for by express legislation; and the very words are inserted, which should be, to meet such a case.

But, in my judgment, there was a far better and more important reason for the insertion of the words. It might have been a matter of some doubt, if the words had not been inserted, whether a clerk, holding both offices, was entitled to the maximum compensation provided for each; or whether it was a casus omissus in the act, and open, therefore, to opposite constructions. For this purpose, the legislature studiously inserted the words, and by them established, that the same rule should apply to all cases, whether both offices were held by the same person, or each by a different person. And it appears to me, with great deference and respect for those, who entertain a different opinion, that this is the plain and rational, and natural, I had almost said, the necessary construction of the words of the clause. If we read the words in their proper order and connection, reddendo singula singulis, it will be found, that there is no difficulty in ascertaining this to be the true meaning. "No clerk of a district court, or clerk of a circuit court, in case both of said clerkships shall be held by the same person shall be allowed by the secretary to

retain of the fees and emoluments of the said offices, for his own personal compensation, a sum exceeding $3,500 per year, for any such district clerk, or a sum exceeding $2,500 per year, for any such circuit clerk." Now, here, I have added nothing to the words of the clause, and omitted nothing applicable to the case put, but I have read the words as they must be read, to give them any sense; and yet, unless I labor under a grievous mistake, the words admit of no other construction or interpretation, than that the clerk shall receive the distinct compensation provided for the clerk of each court, that is, that he shall receive not exceeding $6,000 in all, and not exceeding in any case, the prescribed compensation given to the clerk of each court. If the legislature had intended to restrict the compensation to that given to one of the clerkships, in case both were held by the same person, the natural language would have been, where both of the offices were held by the same person, that he should receive of the fees and emoluments of the said offices, a sum not exceeding $3,500 (or some other fixed sum) for both. The actual language used, is far different. It contains no alternatives of compensation, and no restriction to the fees and emoluments of one office, excluding any for the other.

There is another question, which is incidentally brought to the notice of the court, and results from the semi-annual return of the clerk in the case. The clerk therein claims the sum of $3,000 as his semi-annual compensation, as clerk of both courts, not distinguishing between the fees belonging to him, as clerk of the district court, and those belonging to him, as clerk of the circuit court, and placing all the fees in bankruptcy in one aggregate sum, as if the cases were pending in both courts. In this respect his return is certainly erroneous. He is entitled to all the fees and emoluments, belonging to him, as clerk of the circuit court, including the fees in cases of bankruptcy, adjourned into the circuit court, and not exceeding for the half year, the maximum of $1,250; and to the fees and emoluments belonging to him as clerk of the district court, including the fees in the cases in bankruptcy, pending in the district court, not exceeding for the half year the sum of $1,750. It is suggested, that the fees in cases in bankruptcy, pending in the circuit court, during this half year, were about thirty dollars only; the other fees and emoluments in the circuit court, during the same period, appear by the return to be $609.44, only; so that they do not reach the maximum, charged in the return. This is an error; and it should be reformed, so as to make the return stand consistently with the act.

The judgment must, therefore, be entered for the United States, for the amount, which is due to the treasury, according to this opinion; and it can be readily adjusted between the parties.