THE STATE OF FLORIDA, *ex rel.*, HERBERT LAMSON, PLAINTIFF, VS. JAMES M. BAKER, CIRCUIT JUDGE, DEFENDANT.

1. A male person over eighteen years of age, whose disabilities of minority have been removed by a judgment of a Circuit Judge, under the provisions of "An act to authorize the several Judges of the several Judicial Circuits of the State of Florida to remove the disabilities of minors," approved June 3d, 1889, is entitled to be examined as to his qualifications to pactice law, the same

as if he were twenty-one years of age, upon complying with the other requirements of the statute and rule of court regulating such application.

2. Section 20 of the Legislative Article of the Constitution prohibits special legislation removing the legal disabilities of a minor.

3. Mandamus is, under the practice of this State, a proper remedy where one entitled to be examined for admission to practice law, has been refused an examination.

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*Loton M. Jones and Herbert Lamson, in pro per,* for Plaintiff.

*James M. Baker, in pro per,* for Defendant.

BRIEF OF RELATOR.

Petitioner having had his disabilities of infancy removed by order of Hon. Jas. M. Baker, Circuit Judge, under act of June 3, 1889, now seeks *examination* for admission to practice law in the courts of the State.

1. Mandamus is the proper remedy in this case. Tapping on Mandamus, p. 44.

*Examination* only is sought by this remedy, and as to *examination* there is no discretion in the court.

2. The statute which was already in force at the time of the passage of this last Act, approved June 3rd, 1889, (McClellan's Digest, page 166, section 50,) authorized the Judges of Circuit Courts to remove the disabilities of minors and to grant them a license " to take charge of, manage and control their estates, to contract and be contracted with, sue and be sued, and to bind themselves in all respects as fully as if such minors were twenty-one years of age," whilst the latter not only empowers the Judges of Circuit Courts to remove the disabilities of

minors and allow them to control and manage their estates, to contract and be contracted with, to sue and be sued, but "to do and perform any and all acts, matters and things that he or she could do if twenty-one years of age."

4. The reason existing in the legislative mind for pass- ing this act was to conform to the Constitution of the State and at the same time comply with the long acknowl- edged policy of the State in removing the disabilities of minors in particular cases—formerly by special acts, which were not prohibited—now by general act.

RANEY, C. J.: The second section of "an act to prescribe the mode by which attorneys and counsellors at law may be admitted to practice in the courts of the Territory," ap- proved November 10th, 1828, to be found in McClellan's Digest, p. 120, section 3, provides that it shall be the duty of any person wishing to obtain a license to practice law in the courts of this State, to present to one of the Judges of the Circuit Court satisfactory evidence of good moral char- acter, and of his being twenty-one years of age, and there- upon the Judge shall examine into the qualifications of the applicant, and if found qualified the Judge shall grant him a license to practice in the several courts of this State, which license shall be entered on the minutes of the court. Rule 1, of the Rules of Practice for the government of the Circuit Court in common law actions, framed by this court under the practice act of 1873, chapter 1938, is in about the same language as the above statutory provision ; and Rule 2 is to the effect that if from any cause it shall be in- convenient for the Judge personally to make such exami- nation he may require that it be made by two members of the bar, who shall be previously sworn to faithfully exam- ine and report as to the qualifications of the applicant.

The relator does not pretend to be twenty-one years of age, but to overcome this requirement of the statute and

rule set out above, he averred in his petition for examination for admission to the bar and proved that he had instituted proceedings under the statute approved June 3d, 1889, entitled: "An act to authorize the several Judges of the several Judicial Circuits of the State of Florida to remove the disabilities of minors," and had obtained on the eighteenth day of the same month, from the Judge of the 4th Judicial Circuit, the respondent, a decree adjudging that his "disabilities be and the same are hereby removed, and that the said Herbert Lamson be and is hereby authorized to assume the management and control of all his estate, to contract and be contracted with, to sue and be sued and to do and perform any and all acts, matters and things that he could do if twenty-one years of age."

The respondent, however, refused to examine into relator's qualifications for admission to the bar, or to require two members of the bar to do so, and stated in his order, as the reason of his refusal, that he was of the opinion that the decree of June 18th, made under the minors' relief act of June 3d, 1889, did not authorize relator, he not having attained the age of twenty one years, to make application for admission, nor warrant respondent in making the examination or in requiring one to be made.

The question presented for our consideration is the effect of the act of June 3d, 1889, on the requirement of the act of November 10th, 1828, as to the age of one applying for admission to the bar, when the applicant has obtained an order, such as relator has, under the former or minors' relief act.

The provisions of this act of 1889 are, that Circuit Judges shall have power both in term time and in vacation to remove the disabilities of all minors over the age of eighteen years residing in this State, upon a petition filed by the guardian, or, if there be no natural or legally ap-

pointed guardian, then by the next friend of the minor in any of the circuits. The petition must set forth the name and age of the minor, his or her habits, education and mental capacity for business, and, briefly, the reasons why such disabilities should be removed, and must be sworn to before an officer authorized to administer oaths. The judge is to consider the petition with such evidence as to the character, habits and mental capacity of the minor as to him shall seem proper, and if satisfied that the removal of the disabilities will be for his or her permanent interest and benefit, he shall " make a decree removing his or her disabilities and authorizing such minor to assume the management and control of all his or her estate or estates, to contract or be contracted with, to sue and be sued and to do and perform any and all acts, matters and things that he or she could do if twenty-one years of age." The decree is to be recorded in the county of the minor's residence, and a certified copy of it is to be taken and received as sufficient evidence of the removal of the disabilities, in all the courts of this State in which the minor " may have business or be engaged in any legal controversy."

The act took effect, by virtue of an express provision in it, on the day of its approval.

The constitution of 1885, section 20, of Article III, provides that the Legislature shall not pass special or local laws in certain enumerated cases, and among others, " relieving minors from legal disabilities;" and the next section ordains that " in all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State."

In 1875 the Legislature passed an act, which was approved February 20th, entitled " An act to provide the manner in which minors may be authorized to take charge of and manage their own estates." Its provisions were, in

substance, that it should be lawful for minors over eighteen years of age to apply by petition in chancery to the Judge of the Circuit Court of the Circuit in which they resided for a license to take charge of and manage their own estates, which petition should be referred by the judge to a master to take testimony and make inquiry as to the capacity and qualification of the minor to take charge of and manage his or her estate, and the master was to report to the judge the testimony and his opinion upon the matter referred, and upon a hearing therein, the judge, if satisfied as to the capacity and qualification of the petitioner to take charge of and manage his or her estate, might make an order confirming the report of the master, and grant to the applicant a license in accordance with the prayer of his petition, and thereupon the applicant would " be authorized to take charge of, manage and control " his or her " estates, to contract and be contracted with, sue and be sued, and to bind " " himself or herself " as fully as if " he or she " was twenty-one years of age. Previous notice of the application was to be given by publication, and the license was not to take effect until a publication for four weeks had been made of the decree granting it.

The above section of the Constitution of 1885 is a revision of the seventeenth section of the fourth Article of the Constitution of 1868, but the latter instrument did not contain any provision as to " relieving minors from legal disabilities."

The necessity for the act of 1875, *supra*, is to be found in the numerous acts of special legislation authorizing minors to take charge of and manage their estates, appearing in the pamphlets of the statutes subsequent to the year 1868. This act was not abrogated by the present Constitution, but kept in operation by the second section of the Schedule, or eighteenth Article, which declares that "all

laws now in force not inconsistent with this Constitution shall continue in force until they shall expire by their own limitation or be repealed by the Legislature."

It is well known, and the printed laws will show, that throughout the history of the State, to say nothing of that of the territory, there have also been many special statutes enacted authorizing the courts to admit particular persons, not twenty-one years of age, to practice law upon their passing a satisfactory examination as to professional attainments; and these two classes of special legislation, if they did not of themselves lead to the adoption of the provisions of Article three of the present Constitution, quoted above, at least contributed thereto in a great degree. The purpose and effect of this constitutional provision is to prohibit, and render inoperative any special legislation relieving a person under twenty-one years of age from the legal disabilities which are incident to such minority. Any general legislation for relieving minors from "legal disabilities," which either the common law or the statutes attach to one because he is not twenty-one years of age, is within the purview of the provision, if not in conflict with any other part of the Constitution. We do not mean to intimate that the Constitution does not attach to age less than twenty-one years, any disability that cannot be removed by legislation.

The act of 1889 shows upon its face a manifest intention upon the part of the law-makers to extend the legislation of 1875, as it was within its discretion to do. The act of 1875 went no farther than to authorize the court to license a minor to take charge of and manage his or her estate, to contract and be contracted with, sue and be sued, the same as if he or she were twenty-one years of age, and it is clear that it did not contemplate a removal of the disability except upon the assumption that the applicant had an estate,

the power to contract and to sue being granted because of the necessity thereof to a practical and efficient management of the estate, though not limited to the estate or property rights possessed at the time the petition may have been filed or the license obtained.  The judicial inquiry under this act was directed to the capacity and qualification of the minor to take charge of and manage his or her estate, and the taking charge and management of the estate was the reason which the petition had to show to invoke judicial relief.   The subsequent act is not so limited.   This is shown by its title, which covers all legal disabilities incident to minority, and again by the general presentation required to be made in the petition ot the applicant's habits, education, mental capacity for "business," and "the reasons why such disabilities should be removed."   These reasons are not confined to the management and control of an estate, whatever his reasons may be for being relieved of the disabilities of minority, and clothed with the powers and responsibilities of majority, he can state them.   The judge is to consider the petition with such evidence as to the minor's character, habits and mental capacity as to him shall seem proper, and if satisfied that the removal ot the disabilities will be for his or her "permanent interest and benefit," shall make the decree.   He is to make a full inquiry into the applicant's character, habits and mental capacity for business, and decide whether or not it will be for his or her "permanent interest and benefit" that he or she should be relieved of the disabilities which the law attaches to his or her minority, and given the status of a man in so far as this can be done under the Constitution.   If the chancellor is satisfied from the evidence, that the applicant, notwithstanding the fact that he is not twenty-one years of age, has the developed character, the proper habits, and the mental

capacity for business, that entitle him, consistently with his permanent interest and benefit, to be clothed with the responsibilities of an adult, in so far as the Constitution permits, then the law contemplates that he should be given this status.

The decree is one removing the applicant's disabilities as a minor, and authorizing such minor to assume the management and control of his or her estate, to contract and be contracted with, to sue and be sued, and to do and perform any and all acts and things that he or she could do if twenty-one years of age. It is not one whose purpose and effect is to enable him to manage or control an estate, nor is the possession of an estate necessary to an institution of the proceedings for obtaining the decree. The language as to the estate is not a limitation on the preceding or subsequent provisions of the statute as to the decree; the intent of the Legislature is not to be collected from any particular expression, but from a general view of the whole act. Potter's Dwarris, 193, and note 12.

Where a male person over eighteen years of age has obtained a decree under the act of 1889, our opinion is that he is entitled, upon otherwise complying with the statute and rule of court governing the application for admission to the bar, to be examined, and if found qualified, to be admitted to practice the same as if he were twenty-one years of age. The decree says to the world that notwithstanding the fact of his not being this old it has upon proper inquiry been proved, and is hereby adjudicated, that he has the character, habits and mental capacity for business which the general law concedes to persons who are twenty-one years of age, and the legal disabilities which would otherwise attach to his minority have been removed, and he is authorized to assume the management of any estate he may have or acquire, and to sue and be sued, and to do

and perform any and all acts, matters and things that he could do were he twenty-one years of age. He is in the same position as to applying for admission to the bar that he would be had a special act been passed authorizing him to be examined, and if found qualified to be admitted, notwithstanding his minority. The decree has removed the disability of youth, as the special act would have done prior to the present Constitution ; no more, no less.

Considering the law as it stood under the legislation of 1875, and viewing the new statute as a whole with reference to the subject matters, according to the natural and obvious import of its language and without resorting to subtle and forced construction for the purpose of either limiting or extending its operation, our conclusion is, that the statute and the decree obtained under it entitle the relator to an examination for admission to the bar, the same as if he were twenty-one years old. Weller vs. Harris, 20 Wend., 561 ; U. S. vs. Bassit, 2 Story, 389 ; Potter's Dwarris, 18 ᴸ et seq., 188.

A narrower construction of the act will limit its effect to that which the statute of 1875 had.

Our conclusion as to the effect of the order relieving relator of his disabilities has been reached without reference to the allegations of the petition upon which the order was made, as to his qualifications for " the practice of law."

Remembering that under our decisions mandamus is the proper remedy for restoring an attorney who claims to have been improperly disbarred, State ex rel. vs. Kirke, 12 Fla., 278 ; State ex rel. vs. Maxwell, 19 Fla., 31, we think it a proper remedy for securing the relator an examination as to his qualifications for practicing law. Tapping on Mandamus, 94.

The relator's demurrer is sustained.